The United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Hello everyone and welcome to the Ninth Circuit. We'll take the cases in the order on the day sheet. The first case is Weidong Xie v. Garland, that's submitted on the briefs. The next case is Guevara Trigueros v. Garland, also submitted on the briefs. And the first case for argument is Sarkar v. Garland. Counsel? Good morning, Your Honors. Morning, Your Honors. Good morning, Mr. Sarkisian. Your Honor, basically, we believe 30 years is a long time and a lot has transpired. And in a nutshell, we believe that there are sufficient bad changes in the country to give this man a second chance at having the changes as they impact him explained to an immigration judge, Your Honor, principally the politicization of Islam as it has slowly grown over the last 30 years that the petitioner has been in the United States. That's about it, Judge. What in the record shows that your client has a particularized risk? Yes, because of his prior political involvement and the slow creeping of the Islamists that are financed by mostly the former colonizer, which was the country of Pakistan, Your Honor. And so the types of evidence you put in the records were news stories showing some small shifts in political views. And the evidence you put in the record of Mr. Sarkar's exposure was essentially, I think, that he argued in the mosques. So how does his arguments in the mosques here relate to or result in a particularized risk of the country? Thank you. Thank you, Judge. As to the documentation, of course, that's what was available in 2017. But with respect to his getting into heated arguments, the argument would be that he has become a marked man should he return to a place where the Islamists can get away in effect with murder, Your Honor. Do you have a position on the issue that we asked counsel to be prepared to address today with regard to administrative closure of these cases? Yes, Judge. The government has been gracious enough to agree to an administrative closure. And given that he now has a United States citizen son that has petitioned for him, filed a petition for alien relative in June of 2021. And given the fact that his entry to the United States was lawful, but for being in removal proceedings, he is otherwise eligible to change his status to that of a lawful permanent resident. And so for the time being, the administrative closure, if it was to be granted by the court, would permit the processing of his son's petition. It should have been processed a long time ago. But post COVID, Your Honor, the Department of Homeland Security has slowed down quite a bit. Do you want to save the rest of your time for rebuttal? Yes, Judge. Thank you very much. All right. We'll hear from the government. Good morning, Your Honors. Raya Jarawan on behalf of the respondent, the Attorney General. In order to address the court's question, yes, the government was in favor of a judicial administrative closure. Initially, it was not clear if this case was a candidate for JAC in light of the fact that the I-130 was still pending. However, it was later determined that the petitioners were not an enforcement priority. And so as a result, the government did agree with counsel to file this JAC motion. And so as a result, this case could go forward or it could go to JAC. At this point, the government sees two options. If it were to proceed into a JAC avenue... I don't know what a JAC is. Could you explain that? Certainly. The judicial administrative closure is essentially... ...asking the Ninth Circuit to use its administrative authority to docket the case. But the government has options at the administrative level. Why isn't the government moving to remand to the BIA or moving to reopen proceedings before the BIA rather than attempt to use...ask the Ninth Circuit to take essentially an administrative function?  I understand the question, Your Honor. The DHS would be involved and we would need the consent of DHS in order to remand the matter to the agency. Isn't that within the executive branch's discretion to make that decision? Why would you not ask the DHS for that permission if what you wanted to do was not proceed with the case? Normally, if the petitioner had requested prosecutorial discretion, which they're free to do from DHS, and DHS agreed, DHS consent would be required for oil to pursue remand for the dismissal of the removal proceedings or other forms of prosecutorial discretion that involve vacating a lawful final order of removal. However, with JAC... You don't have prosecutorial discretion? So the lawyers are just rogue agents here? You don't have...you're not exercising the discretion of the executive branch? I'm simply explaining the difference as we use the JAC motions versus the remand motions. The JAC motions are simply a way to temporarily stay the cases while other issues are resolved. However, with a remand, that usually means that... One thing that I think we're, at least I'm struggling with, is this case is from 2017. So it's not like you need a little bit of time to figure stuff out. You've had a lot of time to figure stuff out. And so you're asking us to basically park this case on our docket based on the reason that it's not an enforcement priority for the government. Why is that sufficient for us to have a case on our docket where our docket is huge as it is? That's understandable, Your Honor. The enforcement priorities were made aware to me recently by ICE, which is why I then agreed to the judicial administrative closure motion to be filed with counsel. I was not aware that these petitioners were not an enforcement priority until I was asked by the court to, with the 21-day order, to determine whether or not this case would be amenable to some other avenue. And so once ICE provided us with that information, that is when I agreed to the JAC motion. The remand motions are normally for issues that the agency needs to clarify. But to be clear, as argued with the respondent's answering brief, the board's final order of removal in this case is in accordance with the controlling statutes and case law. And so an appropriate remedy in this matter is not remand for the board to dismiss the removal proceedings, but should the court determine that judicial administrative closure is not in the interest of the court, that's certainly the court's discretion. And the appropriate remedy would simply to be to remand or to deny the petition for review and to proceed to its conclusion. In fact, to be clear, there is a legal basis for the court to deny the petition as the board did not abuse its discretion. However, if the board were to deny the petition for review, the petitioner still has the ability to file a motion to reopen again if his I-130 is approved, which we don't know if it will be. But if it is approved, he is immediately available for adjustment of status. So if all of that is true, I'm still left with the question of why is it that the government wants to just park these cases instead of get them resolved? We can still resolve them even if we park them temporarily. We're not saying that... Right, but you can resolve them now. And then you don't have this pending backlog of cases that are just doing nothing and have done nothing for years. I understand, Your Honor. The judicial administrative closure procedures, as I was made to be aware, is an ability for the court to allow these cases in the interest of judicial efficiency to not go forward on cases that might have another avenue of relief. In this case, there is another avenue of relief. The petitioner is still seeking to reach a conclusion on the I-130 visa petition. If he's able to get that, he's then able to file a motion to reopen and adjust his status, which would then make this petition essentially move. However, the petition can be denied and he still has this avenue for relief. So what I'm saying is you can still go forward with this petition. There is no hurdle to that. But in the interest of case management, in the interest of judicial efficiency, if we park this case temporarily, allow the petitioner to reach this other avenue of relief to its conclusion, then we would not have to go forward on the petition because he would be reopening a case and there would no longer be a final order of removal. And thus, the petition would lack jurisdiction at the court level. I would just like to get some clarity about what authority the executive branch is showing here. So you're saying you didn't have permission from DHS to drop the case and that you would have to ask permission. So this is what? What is this exercise of if it's not of prosecutorial discretion? Well, it's not that DHS gave us no permission. It's simply that the petitioners are free and ICE has a website providing them with the guidelines. Petitioner is free to ask DHS for prosecutorial discretion, which would be in front of the agency to determine whether to dismiss the case or to have some alternative avenue for relief. And we didn't ask DHS for PD for prosecutorial discretion because this case management tool is available to us at the judicial level, which allows us to see through to the end other avenues of relief. I mean, you don't have this. You don't have this tool, right? This is not a tool that's within the purview of the executive branch. You're just saying you moved or you agreed to move for administrative closure for us, for the judiciary. And so what's the authority for the government, who you represent, to ask for this administrative tool? I don't understand that. Is there a regulation? Is there a written policy guidance? What is it? There seems to be a policy that the court has agreed to, is my understanding, that judicial administrative closure is an administrative case management tool. There's no regulation that was implemented to allow for judicial administrative closure. It was simply an administrative decision in the effort to preserve the resources of the court. Rather than going forward on cases in which the petitioners will eventually receive relief, and thus the petition would be moved, it would make sense as an administrative task to park the case temporarily to allow this other avenue of relief from removal to proceed to its conclusion. And do you perceive this as an informal policy or has the Ninth Circuit expressed some policy to the government? It's my understanding that the Ninth Circuit created this opportunity for judicial administrative closure. How did we create it? By what mechanism did we create that? Your Honor, it seems that the court has allowed this mechanism from its own policies. I don't know a specific rule, but the court has allowed the Office of Immigration Litigation and for petitioners to make these motions. It's within the court's purview to decide how the court should address its own docket. And if the court feels that certain cases should not go forward to their conclusion right away, that's within the court's own discretion in its own case management system. But again, this case can go forward to full adjudication and there is a legal basis to do so as we discussed in our answering brief. And the board did not abuse its discretion in this case. There's no legal error that prevents this court from denying the petition. All the government is saying that if you deny this petition, there is still this open avenue of relief that petitioner may have. And thus the petition itself, while it may be denied, the petitioner still would be able to file yet another motion to reopen if he gets DHS's agreement in order to adjust his status. Counsel, has this practice that you've described for the Ninth Circuit, is it happening in other circuits? There are other circuits that have something similar. The Second Circuit I know has a practice of putting cases in abeyance. I don't know if they call it actually judicial administrative closure, but I haven't filed personally other motions, although other circuits are considering, it's my understanding, something similar as a case management tool. Again, as you said, there's a large docket of cases. And so there's a method by which we must triage these cases. If this was an individual who I thought was not appropriate for judicial administrative closure, I would not have agreed to that motion. However, with this information from ICE that he's not an enforcement priority, plus the pending I-130 visa petition, which could allow him to adjust his status, it seemed appropriate at the time. Now, again, I didn't move for that second motion for judicial administrative closure that was filed. I only agreed to the first motion and then your honors did issue a new notice of oral argument. So it was my understanding that the court wanted to proceed at that point. And I prepared for argument. But again, the court can still proceed, can still deny this petition. The government is simply giving it all the information about the background and context of the other dynamics behind this case that are not necessarily front and center with this board decision. Again, I think I've gone over my time, but I would just reflect back onto my answering brief. This petitioner, the board did not abuse its discretion in denying this petitioner's untimely third motion to reopen because petitioner did not demonstrate prima facie eligibility for asylum withholding or cap based on this new evidence that he presented in his motion to reopen. And I see my time is up, so I will leave it at that and refer back to my answering brief. Thank you. Mr. Sarkissian, do you have rebuttal? Your Honor, just very, very briefly. If I may shed a bit of light on what counsel was explaining to the court. The current administration issued orders regarding cases that are non-priorities and those orders were put out in a memo in only May of 2021. Hence, perhaps explain the fact that the communication between ICE and the government was rather recent. This existed during the Obama administration. It went out of existence and it came back just last May. I just wanted to shed that bit of light, if I may. Otherwise, Your Honor, I will rest on the brief with the court's permission except to say that I believe this alien has met the Hoxha Ashcroft test of presenting the possibility of a 10% chance of persecution. And with your permission, I'll just rest. Okay, we thank both sides for their argument. The case of Sarkar v. Garland is submitted.
judges: IKUTA, LEE, FORREST